FILED
2017 Mar-15  AM 10:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| KENNETH WATKINS, )<br><br>      Plaintiff, )<br><br>v. )<br><br>CITY OF ADAMSVILLE (DEPARTMENT OF)<br> POLICE, a municipal corporation, )<br>GAIL PHILLIPS, in her individual capacity, )<br>and official capacity, )<br><br>      Defendants. ) | CIVIL ACTION NO.<br><br><br>JURY REQUEST |

---

## COMPLAINT

---

COMES NOW the Plaintiff, KENNETH WATKINS (hereinafter "Watkins"), and files this Complaint to be answered by the Defendants pursuant to the Federal Rules of Civil Procedure.

## I.    JURISDICTION AND VENUE

1. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights).

2.  Venue is proper pursuant to 28 U.S.C. §1391 (all parties are located within the Northern District of Alabama, Southern Division, and the acts complained of took place in the Northern District of Alabama, Southern Division).

3.  This is a suit authorized and instituted pursuant to 42 U.S.C. 1981, 42 U.S.C. 1983, the First and Fourteenth Amendments to the United States Constitution and the Equal Protection clause of the United States Constitution.

4.  The jurisdiction of this Court is invoked to secure protection of and redress the deprivation of rights secured by 42 U.S.C. 1981 providing protection and relief against racial discrimination and retaliation, and 42 U.S.C. 1983 providing relief for gender discrimination, racial discrimination and retalaiton under the First and Fourteenth Amendments to the United States Constitution and the Equal Protection clause of the United States Constitution.

5.  There are no statutory prerequisites for filing suit under 42 U.S.C. 1981 and the claims are filed within 4 years of the alleged actions. 28 U.S.C. § 1658(a); *See* Jones v. R. R. Donnelley & Sons Co., 541 U.S. 369 (U.S. 2004); Smith v. Trane U.S., Inc., 2011 U.S. Dist. LEXIS 119490 (S.D. Ga. Oct. 17, 2011).

6.  There are no statutory prerequisites for filing suit under 42 U.S.C. 1983.

II.  **PARTIES**

7.  The Plaintiff, Watkins is over the age of nineteen, is a citizen of the United States, and is a resident of the State of Alabama.

8. The Defendant, City of Adamsville is an entity subject to suit under 42 U.S.C. 1981 and 42 U.S.C. 1983.

9. The Defendant, Gail Phillips, at all times hereto was the employee of the City of Adamsville, who was Plaintiff's immediate supervisor, and is responsible for promulgation and implementation of employment policies, procedures, and practices in the City of Adamsville, Alabama, who acted under color of state law and local law, and is an individual subject to suit under 42 U.S.C. 1981 and 42 U.S.C. 1983.

## III.   **FACTUAL ALLEGATIONS**

10. The Plaintiff, Watkins, a black male, worked for the City of Adamsville performing as a jailor and dispatcher making $13.16 per hour from August 12, 2013 to March 29, 2016.

11. Gail Phillips (Phillips), a white female, was Watkins immediate supervisor.

12. The police Chief is Robert Carter (Carter), a white male.

13. There were only four black employees at the City Adamsville Police Department, and only two were either dispatch or jailor.

14. Phillips treated Watkins different than similarly situated white or female employees.

15. When Watkins first arrived at City of Adamsville he asked to be placed on night shift after completion of his training on day shift.

16. Phillips gave Jana Jameson, a white female, the night shift and laughed because she did not give Watkins the position.

17. Jana Jameson started two weeks after Watkins, so Watkins should have been given priority in his request.

18. Watkins was given the 2nd day shift.

19. Phillips continuously talked down to Watkins and whispered behind his back.

20. White and female employees were not talked down to or whispered about behind their backs.

21. On or about January 14, 2014, Elizabeth Money (Money), a white female, assaulted Watkins by throwing a book at him, and the city claimed Money received suspension for the weekend.

22. Deidra Levy (Levy), a comparator to Money, was terminated because she hit a white employee over the head.

23. Because, Money struck a black employee, it was not considered a terminable offense.

24. Watkins was questioned about the book throwing incident in the Chief's office.

25. Watkins complained to the Chief and Phillips about the disparate treatment he suffered by Phillips.

26. After Money struck Watkins with the book, she was moved to night shift 10-6 am.

27. Money complained to Scot Harbison Fire Chief/Human Resources that she couldn't handle night shift.

28. Money was moved right back to the 2nd day shift, and on March 10, 2014, Watkins was moved to night shift.

29. When Watkins was moved to night shift, Phillips specifically asked Jenna Jameson, a white female, to watch Phillips.

30. Three Days later, March 13, 2014, Watkins received a letter from Phillips outlining alleged "problems" she claimed of Watkins performance.

31. One of the performance "problems" contained in the letter was that Watkins allegedly denied the female inmates coffee.

32. On the day in question, Watkins had already given the females coffee and had asked Phillips if he could give the inmates *additional* coffee.

33. Second, the letter criticized Watkins for waking up the females by whistling, being on the phone and slamming doors.

34. The office was separate from the jail, so the inmates could not have known whether he was on the phone, he doesn't whistle or hum, inmates have to be checked on every 15 minutes, and the doors are heavy.

35. Third, the letter criticized Watkins for taking a blanket away from an inmate.

36. The blanket was over the inmates head, and she would not lower the blanket so he could see her face to ensure she was okay and breathing which was protocol.

37. Fourth, the letter criticized Watkins for waking inmates too early for breakfast.

38. The inmates did not have clocks, so they would not have known what time it was, and breakfast was served around 3:45 and 4:00 a.m.

39. Phillips attempted to fire Watkins at this time over these non-offenses.

40. Watkins went to the Chief of Police and told him to review the tapes.

41. The Chief of Police reviewed the tapes, realized Watkins did not do anything wrong, and did not fire Watkins at that time.

42. Leah Fields ("Fields"), a white female, would regularly sleep on the job and she was not terminated.

43. Fields was having a sexual relationship with one of the inmates, however, upon discovering the relationship, she was not terminated immediately.

44. After the relationship was discovered, this inmate would cry in his cell, as he felt responsible for getting Fields in trouble.

45. On June 1, 2015, Jameson gave the male inmate discussed in paragraph 44 above a sheet and a blanket and did not check up on him for 40 minutes when inmates should be checked on every 15 minutes.

46. This inmate hung himself at the jail.

47. Jameson was not fired at that time.

48. Phillips tried to blame Watkins for Jameson's mistake and terminate him again, however, Watkins was working dispatch that night, and was not assigned to do inmate checks.

49. Phillips made no attempts to terminate Jameson, a white female, for said offense.

50. In June, 2015, white officer, Derrick Mills, wrote Watkins name on a t-shirt and indicated he was an "inmate".

51. Nothing was done to Derrick Mills, white male, for his racist behavior.

52. Watkins asked if there was a nepotism policy because he had a family member who wanted a job.

53. Watkins was told there was a nepotism policy and his family member could not work there.

54. Approximately one month later, Derrick Mills, stepson to Sergeant Nicks (both white males); and Caleb Morris, nephew to Detective Whitfield (both white males), were hired.

55. In August, 2015, Watkins asked to move off of the night shift so that his wife could switch to night shift.

56. Phillips said "no" and claimed it was because Ryan Nicks and Derrick Mills, both white males, were related and they could not be on the same shift.

57. In August, 2015, a female inmate threw food at Watkins.

58. Watkins filled out a police report on the incident.

59. The Chief told the inmate that Watkins was not going to press charges without asking Watkins for his consent.

60. White or female employees who filled out police reports on inmates did not have their charges dropped without their consent.

61. Phillips wrote up Watkins for failing to wash the clothes.

62. Other white, female, employees left clothing unwashed on their shifts.

63. Phillips tried to get the Chief to fire Watkins at that time for not washing clothes and she claimed he "yelled" at her.

64. Watkins explained to the Chief that he could not wash clothes when the machine was down, that he did not yell at her, and that he was being treated unfairly again.

65. The Chief reviewed the tapes again, and did not fire him.

66. On or about January 13, 2016, a female inmate had a blanket on her head.

67. The female wouldn't remove the blanket so Watkins instituted a 24 hour lockdown disciplinary on her.

68. Phillips reviewed the disciplinary action taken against the inmate, changed her lock down, and wrote up Watkins and tried to terminate Watkins again, even though it was consistent with her prior orders not to remove the blanket.

69. When white or female employees who disciplined inmates were not reviewed and the disciplines were not rescinded by Phillips.

70. In March, 2016, Louis Cunningham had to be off of her 10pm-6 am shift on Friday/Saturday, for surgery.

71. Watkins was scheduled 2-10 pm Sunday, and 10 pm-6 am on Monday, Tuesday, Wednesday, and Thursday.

72. There were several other white or female employees who had an off day and would be available to work.

73. Phillips asked Watkins to come in to cover for Cunningham which would render him having no off days which was not protocol.

74. Phillips claimed Watkins got in her face which was false.

75. Phillips terminated Watkins over this incident.

76. On November 29, 2016, Watkins contacted City Hall to let them know he was going to come to City Hall the next day to pick up a copy of a letter outlining the "reason for separation" that he had previously signed.

77. On November 30, 2016, Watkins appeared at City Hall to pick up the letter, and Jane Garner, white female, called the police on him.

78. All of the conduct complained of herein was conducted individually and, in the alternative, according to policy and custom of the City of Adamsville or was committed by authorized officials whose acts can be fairly deemed to be the actions and official policy and customs of Defendants City of Adamsville, Police Department, and accomplished under color of state and local law.

79. The Defendant, Phillips' conduct violated clearly established statutory or constitutional rights of which any reasonable person would have known.

80. Shortly after becoming employed at the City of Adamsville, Watkins learned that no black male employees lasted under Phillips supervision for a year.

## IV. CLAIMS

### COUNT I-RACE DISCRIMINATION-DISPARATE TREATMENT- IN VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE UNITED STATES CONSTITUTION THROUGH 42 U.S.C. 1983 AND 42 U.S.C. 1981

81. The Plaintiff adopts and re-asserts each and every allegation contained in paragraph 1-80 as if fully set out herein.

82. The Plaintiff is a member of a protected class.

83. The Defendant, City of Adamsville and Gail Phillips, discriminated against Watkins in the terms, conditions, and privileges of employment when they:

    a)  failed to write up white employees for not doing laundry on a shift when they did write up Watkins for failing to do laundry;

    b)  for not allowing a family member to apply for a position due to nepotism when they did allow white employees' family members to apply for work;

    c)  when they attempted to fire Watkins for an offense of not checking on an inmate for 40 minutes even though it was not his job duty on that evening, then not attempting to terminate the white employee when they found out she was responsible;

    d)  when they terminated Deidra Levy for striking a white employee, but not terminating Elizabeth Money when she struck Watkins, a black employee, with a book;

    e)  when they failed to place Watkins on the night shift upon his request, yet placed Jenna Jameson, a white employee, on the night shift even though she came two weeks after Watkins;

    f)  when they failed to place Watkins back on the day shift, but allowed white employee Elizabeth Money to go to day shift upon her request;

g) when they talked down to Watkins and whispered behind his back while not talking down to white employees or whispering behind white employees backs;

h) when they required Watkins to come in and have no days off when other employees had available days off and could cover;

i) when they reviewed and rescinded Watkins disciplinary toward an inmate, while white inmates disciplinary actions were not reviewed and rescinded; and

j) when they repeatedly attempted to terminate Watkins over non-offenses while white employees were committing terminable offenses and termination was never considered.

k) when they terminated Watkins allegedly for failing to come in an cover a shift for another employee while allowing other, white employees to refuse to cover for shifts;

84. As a proximate cause and cause in act of said disparate treatment, the Plaintiff was caused to suffer the following injuries and damages:  shame, humiliation, embarrassment, stress, emotional distress, pain, suffering, out of pocket expenses, loss of wages (front and back pay), lost benefits, and retaliation.

## COUNT II-RACE DISCRIMINATION -RETALIATON- IN VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION THROUGH 42 U.S.C. 1983 AND 42 U.S.C. 1981

85.   The Plaintiff adopts and re-asserts each and every allegation contained in paragraph 1-84 as if fully set out herein.

86. The Defendants, City of Adamsville and Gail Phillips, in her individual and official capacity, retaliated against Watkins in the terms, conditions, and privileges of employment when after Watkins's complaint of discrimination it: immediately after Watkins complained of disparate treatment, Phillips assigned Jameson to "watch" Watkins, Watkins was written up for false, non-offenses, and Phillips attempted to have Watkins fired for said non offenses; When this attempt failed, she attempted to have him fired again by accusing him of being responsible for the hanging death of an inmate, while Watkins was actually assigned to dispatch and another white employee was assigned to jail and had failed to conduct the 15 minute check; and by actually terminating him for being unable to cover a shift, as he would have no days off when other white employees who had days off and could cover the shift and who had not complained of discrimination were not terminated.

87. The Defendants' actions have deprived Watkins of his right to freedom of speech and association as guaranteed by the First Amendment to the Constitution of the United States, and to Equal Protection as guaranteed by the Fourteenth Amendment of the Constitution the United States.

88. The violation of rights was proximately caused by Defendants' who were acting under color of state law, and local ordinances, regulations, customs, or usages of the City of Adamsville Department of Police in violation of 42 U.S.C. §1983.

89. As a proximate cause and cause in act of said retaliation, Watkins was caused to suffer the following injuries and damages: shame, humiliation, embarrassment, stress, emotional distress, pain, suffering, out of pocket expenses, loss of wages (front and back pay), lost benefits associated, and retaliation.

## COUNT III- GENDER DISCRIMINATION IN VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE UNITED STATES CONSTITUTION THROUGH 42 U.S.C. 1983

90. The Plaintiff adopts and re-asserts each and every allegation of paragraphs 1- 89 as if fully set out herein.

91. The Plaintiff is a member of a protected class and was denied equal treatment, job duties, shifts, discipline, compensation, termination by the Defendant because of his sex.

92. The employment relationship between Watkins and the City of Adamsville give rise to a cause of action for gender discrimination.

93. The Defendants gender discrimination against the Plaintiff violates the Equal Protection Clause of the Fourteenth Amendment, thus entitling the Plaintiff to all appropriate relief provided under 42 U.S.C. §1983.

94. The Defendants implemented policies and customs that discriminated on the basis of gender, and that therefore violate the Plaintiff's rights under the Fourteenth Amendment to the United States Constitution, enforced via 42 U.S.C. §1983.

95. The Defendants discriminated against the Plaintiff on the basis of his sex by:

a) failed to write up female employees for not doing laundry on a shift when they did write up Watkins for failing to do laundry;

b) when they attempted to fire Watkins for an offense of not checking on an inmate for 40 minutes even though it was not his job duty on that evening, then not attempting to terminate the female employee when they found out she was responsible;

c) when they failed to place Watkins on the night shift upon his request, yet placed female Jenna Jameson on the night shift even though she came two weeks after Watkins;

d) when they failed to place Watkins back on the day shift, but allowed female employee Elizabeth Money to go to day shift upon her request;

e)  when they talked down to Watkins and whispered behind his back while not talking down to female employees or whispering behind female employees backs;

f)  when they required Watkins to come in and have no days off when other female employees had available days off and could cover;

g)  when they reviewed and rescinded Watkins disciplinary toward an inmate, while female inmates disciplinary actions were not reviewed and rescinded; and

h)  when they repeatedly attempted to terminate Watkins over non-offenses while female employees were committing terminable offenses and termination was never considered.

i)  when they terminated Watkins for failing to come in an cover a shift while allowing other, female employees to refuse to cover for shift.

96.    The Defendants took these actions as part of an unofficial government policy or custom which discriminates against male employees.

97.  The Defendants did so in violation of clearly established constitutional and statutory authority that such actions are in violation of the law.

98.  The Defendants took these actions with knowledge they were in clear violation of the law.

99. The Defendants were acting under color state law.

100. The Defendants proximately caused this violation of the Plaintiff's rights.

101. The Defendants actions were willful, malicious, and intentionally directed to harm the Plaintiff.

102. The Defendants acted with deliberate indifference toward the probable consequences of their actions.

103.     The Plaintiff was caused to suffer the following injuries and damages:  The Plaintiff was caused to suffer shame, humiliation, embarrassment, stress, emotional distress, pain, suffering, out of pocket expenses, loss of wages (front and back pay), lost promotion, lost benefits associated with promotion, and retaliation.

## COUNT IV-GENDER DISCRIMINATION -RETALIATON- IN VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION THROUGH 42 U.S.C. 1983

104. The Plaintiff adopts and re-asserts each and every allegation contained in paragraph 1-103 as if fully set out herein.

105.     The Defendant, City of Adamsville and Gail Phillips, in her individual and official capacity, retaliated against Watkins in the terms, conditions, and privileges of employment when after Watkins's complaint of discrimination it: immediately after Watkins complained of disparate treatment, Phillips assigned

Jameson to "watch" Watkins, Watkins was written up for false, non-offenses, and

Phillips attempted to have Watkins fired for said non offenses; When this attempt

failed, she attempted to have him fired again by accusing him of being responsible

for the hanging death of an inmate, while Watkins was actually assigned to

dispatch and another white employee was assigned to jail and had failed to conduct

the 15 minute check; and by actually terminating him for being unable to cover a

shift, as he would have no days off when other white employees who had days off

and could cover the shift were not terminated.

106.     The Defendants' actions have deprived Watkins of his right to

freedom of speech and association as guaranteed by the First Amendment to the

Constitution of the United States and to Equal Protection as guaranteed by the

Fourteenth Amendment of the Constitution the United States.

107.     The violation of rights was proximately caused by Defendants'

who were acting under color of state law, and local ordinances, regulations,

customs, or usages of the City of Adamsville Department of Police in violation of

42 U.S.C. §1983.

108.     As a proximate cause and cause in act of said retaliation,

Watkins was caused to suffer the following injuries and damages: shame,

humiliation, embarrassment, stress, emotional distress, pain, suffering, out of

pocket expenses, loss of wages (front and back pay), lost benefits associated, and retaliation.

### V.   DAMAGES

108.   The Plaintiff adopts and re-asserts each and every allegation of paragraphs 1- 107 as if fully set out herein.

109.   The Plaintiff has suffered embarrassment, humiliation, shame, damage to reputation, mental distress, emotional and physical pain, stress, anguish, loss of wages (front and back pay), loss of benefits, as a consequence of the defendant's unlawful conduct.

### VI.   PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, the Plaintiff respectfully prays that this Honorable Court assume jurisdiction of this action and after trial:

1.   Enter an Order requiring the defendant to make the Plaintiff whole by awarding him lost wages (front and back pay plus interest), the value of the lost benefits, compensatory damages, liquidated damages, and punitive damages.

2.   The Plaintiff prays for such other relief and benefits as the cause of justice may require, including but not limited to, attorney's fees and expenses.

### THE PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY

Respectfully Submitted,

*Patricia A Gill*

Patricia A. Gill
GIL047
Attorney for the Plaintiff


OF COUNSEL
PATRICIA A. GILL, P.C.
PO BOX 55304
Birmingham, Alabama 35255
Phone:  (205) 307-9555
Facsimile:  (205) 930-9809
e-mail:  patriciagill@yahoo.com

**SERVE DEFENDANT BY CERTIFIED MAIL:**

**City of Adamsville**
**Clerk, Jana Gardner**
**Adamsville City Hall**
**4911 Main Street**
**Adamsville, AL 35005**